# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# —BROWNSVILLE DIVISION—

United States District Court
Southern District of Texas
ENTERED

DEC 2 1 2007

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| DON JOHNSON MOTORS, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-06-047 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Defendant. | § | |

# MEMORANDUM OPINION AND ORDER

## I.   BACKGROUND

1.   Don Johnson Motors, Inc. ("Plaintiff") is a car dealership operating in the Brownsville, Texas area. (Testimony of Don Johnson, Sr. ("Johnson"), Day 1).[1] The corporation formed in 1974. (*Id.*)

2.   Plaintiff added Jeep vehicles to its dealership, which resulted in an increase in sales volume and required Plaintiff to hire more employees. (Johnson, Day 1).

3.   Sometime prior to 1999, because of the increase in employees, the Internal Revenue Service required Plaintiff to begin filing its taxes by Electronic Funds Transfer ("EFT"). (Johnson, Day 1). From that date forward, Plaintiff had to file its Form 940 annual federal unemployment taxes ("Form 940 taxes") and Form 941 quarterly employment taxes ("Form

---

[1] The trial testimony is referred to by the day of trial covered (i.e., Day 1, Day 2 or Day 3) as a formal transcript has not been requested by either party. When referring to trial testimony, the Court will use the form: (Witness Name, Day of Trial) (e.g., Johnson, Day 1). This Court's quotation of various witnesses is based on this Court's recollection of trial. Ultimately, the Court will defer to the formal statement of facts if the preparation of one is ever requested. Nevertheless, the Court is confident in the accuracy of the substance of the quotations.

941 taxes") electronically through the Electronic Federal Tax Payment System ("EFTPS").
(*See* A. Carlos Barrera ("Barrera"), Day 1).

4.      In prior years, Plaintiff completed its tax returns and filings by hand.  (Johnson, Day 1).
Johnson testified that he had signed all the tax returns and made sure the payments were
deposited. (*Id.*) Johnson testified that he felt like he "lost control when they took [Plaintiff's
tax obligations] out of his hands." (*Id.*)

### A.      The IRS Assessed Penalties Against Plaintiff for Failure to Timely File Returns and Pay its Taxes for Periods from 1999 to 2002

5.      From 1999 through 2002, Plaintiff delegated payroll tax functions to an in-house accountant,
Michael Ezequiel ("Ezequiel").   Ezequiel performed his role under the supervision of
Plaintiff's office manager.  (Pl. Ex. 6); (*see* Johnson, Day 1).

6.      Plaintiff's office manager was responsible for oversight of the employment taxes and for
signing Plaintiff's employment tax returns.  (Pl. Ex. 6).

7.      Plaintiff hired Ezequiel to handle, among other responsibilities, the actual electronic filing
of its employment taxes.  (Johnson, Day 1).  Ezequiel prepared Plaintiff's employment tax
returns and was also in charge of monitoring the payroll accounts and the information
included in the Forms 940 and 941.  (*See* Pl. Ex. 6).  Johnson testified that Ezequiel was
given "quite a bit of responsibility." (*Id.*)

8.      At some point in 1999, for reasons not explained, Ezequiel stopped paying portions of
Plaintiff's payroll taxes to the IRS.  (*See* Johnson, Day 1); (Internal Revenue Service
Revenue Officer Ricardo Sobrevilla ("Sobrevilla"), Day 2); (Pl. Ex. 3).  As a result, Plaintiff

made incomplete deposits to the IRS from 1999-2002. (Sobrevilla, Day 2); (Pl. Ex. 3). Ezequiel also failed to make payments to Plaintiff's 401K plan. (Johnson, Day 1).

9.  Plaintiff's incomplete deposits apparently masked the fact that Plaintiff was not fully complying with its tax obligations. (Sobrevilla, Day 2).

10. The executives of Plaintiff were unaware of any problems with its payroll accounts for the years 1999 through 2002 until Johnson began an internal review of Plaintiff's financial reports in December of 2002. (Pl. Ex. 6). In December of 2002, Johnson began his yearly analysis of Plaintiff's November financial statement to determine what Plaintiff might be able to "write off." (Johnson, Day 1). Johnson noticed that the November financial statement reflected a "lot more cash than [he] usually had." (*Id.*)

11. Plaintiff's cash management savings account had gone from $200,000 to nearly $800,000. (Johnson, Day 1). This excess cash worried Johnson because Plaintiff "was not making that much money" and Plaintiff's "inventories weren't going down." (*Id.*)

12. Also approximately around this time, Plaintiff was notified that it had not paid its employees' portion of the 401K participation in several months. (Johnson, Day 1).

13. Johnson initially believed the imbalances were the result of a change in computer software Plaintiff underwent in August of 2002. (*See* Johnson, Day 1); (Pl. Ex. 6).

14. Nevertheless, because of the extent of the irregularities, Johnson called his accountant, A. Carlos Barrera ("Barrera"), a partner at Long & Chilton, L.L.P., to investigate the situation. (Johnson, Day 1); (*see* Pl. Ex. 6).

15.    Barrera and another Long & Chilton employee, Sandra Hargis ("Hargis"), initially thought an employee might be stealing money from Plaintiff and began checking Plaintiff's bank accounts. (Johnson, Day 1).

16.    During the pendency of this action and throughout trial, Plaintiff has never alleged or presented any evidence demonstrating that Ezequiel or any other employee embezzled funds from Plaintiff.

17.    In March 2003, Plaintiff received a notice from the IRS stating that Plaintiff had not sent in a Form 941 return for a quarter in 2002 and had not paid its payroll tax for that quarter. (Johnson, Day 1); (*see* Pl. Ex. 3).

18.    Barrera and Hargis then recreated the Form 941 returns for each quarter in 2002. (Johnson, Day 1). Through this process, Barrera and Hargis discovered that, for some time, Ezequiel had not been paying portions of the payroll taxes and had been failing to make payments to Plaintiff's 401K plan for its employees. (Johnson, Day 1).

19.    Barrera then consulted the IRS Taxpayer Hotline regarding the situation. (Barrera, Day 1). These consultations revealed that Plaintiff's failure to file Form 941 employment tax returns and pay Plaintiff's employment taxes extended beyond 2002 to periods in 1999, 2000 and 2001. (*Id.*)

20.    Plaintiff filed late returns for tax periods in 1999-2002 in January, March and July of 2003. (*See* Def. Ex. 1 at pp. 10, 26, 35, 47, 60, 71, 82, 91, 101, 111, 119, 128, 135, 141). Plaintiff also paid at least some of the outstanding tax liabilities for those tax periods. (*Id.*)

21.    The IRS assessed penalties against Plaintiff for its failure to file returns and timely pay taxes for periods in 1999 through 2002. (*See* Def. Ex. 1 at pp. 11, 28, 38, 52, 64, 75, 86, 94, 104,

4

112, 119, 128, 135, 141).  Plaintiff received penalty notices for these tax periods beginning

in 2003.  (*See, e.g.*, Def. Ex. 1 at pp. 15, 32); (*see also* Pl. Proposed Findings of Fact and

Conclusions of Law [hereinafter Pl. Findings] at p. 19).[2]  Johnson also testified that Plaintiff

received penalty notices.  (Johnson, Day 2).

22.     Plaintiff requested an abatement of all penalties assessed for periods in 1999-2002 for

reasonable cause.  (*See* Barrera, Day 1); (Pl. Ex. 6).  The IRS denied this request.  (Pl. Ex.

32).  The denial stated in part:

> Your request to abate . . . does not conform to reasonable cause. . . .
> A prudent businessman would exercise caution in the training of
> specific responsibilities of each new employee.  You mentioned the
> failure by both the in-house accountant and the supervising manager
> to perform these responsibilities and the concealment of those failures
> for those years is what caused the delinquency.
> . . .
> [O]verall, reasonable cause requirements state, "Relying on another
> person to perform a required act is generally not sufficient for
> establishing reasonable cause". [sic]
> . . .
> This is your written notification that I have determined that your
> request for reasonable cause abatement was not met and I am denying
> abatement of all the penalties.
> (*Id.*)

23.     Plaintiff appealed this denial of abatement.  (Pl. Ex. 51).  Plaintiff's appeal was also denied.

(*Id.*)

24.     Plaintiff has not paid the penalties and some accrued interest owed for the periods in 1999-

2002.  (*See* Johnson, Day 2); (Pl. Ex. 78).

---

[2] Both Plaintiff and Defendant's Proposed Findings of Fact requested this Court to find that Plaintiff received penalty notices. This Court has independently determined that Plaintiff received penalty notices for those periods and will view the parties' request for findings of fact to be a further stipulation of fact on the issue of whether Plaintiff received penalty notices. *See* (Pl. Findings at p. 19); (Def. Findings at p. 12); Fed. R. Civ. P. 11.

**B.     The IRS Also Assessed Penalties Against Plaintiff for Failure to Timely Pay and
        Deposit Its Taxes for Periods in 2003 and 2004**

25.     Since Plaintiff was required to use EFTPS to file its employment taxes, Plaintiff utilized the

        Automated Clearing House ("ACH") system to transmit payment of payroll taxes to the IRS

        through the EFTPS-Through a Financial Institution System during a period which included

        2003 and 2004.  (*See* Hargis, Day 2); DEPT. OF TREASURY, FINANCIAL INSTITUTION

        HANDBOOK FOR EFTPS, INTERNET VERSION [hereinafter HANDBOOK FOR EFTPS] 5 (2002),

        *available at*, http://www.fms.treas.gov/eftps/eftpshandbook.pdf.

26.     A taxpayer using the EFTPS-Through a Financial Institution system authorizes a financial

        institution, such as the taxpayer's bank, to initiate an ACH credit transaction to pay the IRS.

        HANDBOOK FOR EFTPS at p. 5.  Plaintiff designated Texas State Bank (the "Bank") as its

        financial institution for purposes of making payments of employment taxes to the IRS

        through EFTPS.  (*See* Barrera, Day 1); HANDBOOK FOR EFTPS at p. 5.

27.     The Bank provided Plaintiff with specific software to use when initiating EFTPS

        transactions.  (Barrera, Day 1).  Plaintiff's employee would use the software to instruct the

        Bank to transfer money from Plaintiff's account to an IRS account to cover Plaintiff's

        employment tax liability for a specified tax period. (*Id.*); (Hargis, Day 2).

28.     In June 2003, the Bank implemented a new software program for Plaintiff to use when

        electronically filing its employment taxes. (Pl. Ex. 9). The Bank was supposed to send two

        people to train Plaintiff's employees on the new Bank software, however the Bank only sent

        one trainer. (Johnson, Day 1).  It was later determined that this trainer had only worked for

        the Bank for two days. (*Id.*)

29.     Two of Plaintiff's employees received this training from the Bank on the new Bank software. (Johnson, Day 1).

30.     When utilizing the new Bank software, Plaintiff's employee would see a screen telling the employee to input the Plaintiff's tax identification information, Plaintiff's bank account number, and the amount the Plaintiff wanted to pay over to the IRS. (Hargis, Day 2).

31.     The new software also required Plaintiff's employee to mark the tax period of the filing twice (e.g., First Quarter - 2004) in two separate fields before submitting its payment. (Barrera, Day 1); (Hargis, Day 1). The tax periods marked had to match or the new software would not make the deposit. (Barrera, Day 1).

32.     Plaintiff's employees did not realize there were two fields that needed to be marked and that the two fields also needed to be identical. (Barrera, Day 1); (Hargis, Day 1). The trainer never told Plaintiff's employees about the need to mark the tax period in the second field during the Bank's training. (Barrera, Day 1).

33.     Plaintiff's employees failed to mark and match these two fields when attempting to submit payments of Plaintiff's employment taxes. (*See* Barrera, Day 1); (Hargis, Day 1). Consequently, the Bank did not immediately make deposits on behalf of Plaintiff into the IRS accounts. (*See id.*) Several of Plaintiff's employment tax payments were therefore received late by the IRS. (*See, e.g.,* Def. Ex. 1 at pp. 152-153, 163, 172).

34.     Since Plaintiff failed to timely deposit and pay its employment taxes for these periods in 2003-2004, the IRS assessed penalties against Plaintiff for these tax periods. (Def. Ex. 1 at pp. 153, 163, 172). The IRS sent notices of these assessments to Plaintiff. (*See* Def. Ex. 2 at p. 24); (Def. Ex. 1 at pp. 167, 176, 182); (*see also* Pl. Findings at p. 19).

7

35.   IRS Revenue Officer Alice M. Rios ("Rios") conducted an investigation into the situation involving the Bank software and Plaintiff's late payments. (*See* Pl. Ex. 32).

36.   The Bank sent Plaintiff a letter on February 6, 2004 admitting that its training of Plaintiff's employees on the new Bank software had been inadequate. (Pl. Ex. 9).   The Bank had not made Plaintiff's employees aware that certain "manual updates" were required for each transaction.   (*Id.*)  These manual updates appear to include marking the tax period twice on the screen before electronically submitting tax payments.  (*Id.*)  The Bank admitted that its failure to adequately train Plaintiff's employees was the cause of Plaintiff's failure to make timely payments and deposits to the IRS through EFTPS in 2003-2004.  (*Id.*)

37.   Plaintiff's representatives testified that Barrera faxed the February 6, 2004 letter from the Bank to Rios on or around February 10, 2004.   (Barrera, Day 1); (Hargis, Day 1); (*see* Johnson, Day 1).

38.   It is unclear whether Rios ever received the fax of the Bank's February 6, 2004 letter admitting its fault in failing to properly train Plaintiff's employees.   Rios stated in an October 14, 2004 letter that during her investigation, Plaintiff's employees told her the Bank did not agree that there were errors in its software or training and that the Bank would not submit written documentation to support the error.  (Pl. Ex. 32).  Rios made no mention of receiving the Bank's February 10, 2004 letter and, in fact, states that the Bank denied committing any error.  (*See id.*)

39.   Plaintiff claims that Rios never actually spoke to any of Plaintiff's employees as she stated in her October 14, 2004 letter. (Pl. Ex. 33).  Johnson testified during trial, however, that he could not recall whether Rios spoke with Plaintiff's employees, but identified an employee

8

that Rios may have spoken with. (Johnson, Day 1). It remains unclear whether Rios actually spoke to Plaintiff's employees and, if she did, who and how many employees she spoke with during her investigation.

40.   Plaintiff requested an abatement of all penalties imposed for periods in 2003-2004 for reasonable cause. (*See* Pl. Exs. 9, 10). The IRS denied this request, at least in part on the findings of Rios's investigation. (*See* Pl. Ex. 32).

41.   Plaintiff has not paid the penalties and some accrued interest owed for the periods in 2003-2004. (*See* Johnson, Day 2); (Pl. Ex.78).

C.   **Liens Are Filed Against the Plaintiff**

42.   In April 2005, the IRS sent Plaintiff notices that it was filing liens against Plaintiff for outstanding tax liabilities. (*See, e.g.,* Def. Ex. 1 at pp. 164, 173).

43.   The IRS filed two liens against Plaintiff in May 2005. (*See* Hargis, Day 1); (Johnson, Day 2).

44.   The first lien, filed May 9, 2005, covered liabilities for periods in 2003-2004 (the "2003-2004 lien"). (Sobrevilla, Day 3); (*see* Trial Tr., Day 3). The liabilities on this lien totaled $101,279.92. (*See* Pl. Ex. 58).

45.   The second lien, filed May 20, 2005, covered outstanding liabilities for periods in 1999-2002 (the "1999-2002 lien"). (Sobrevilla, Day 3); (*see* Trial Tr., Day 3). The liabilities on this lien totaled $277,078.40. (*See* Pl. Ex. 52).

**D.    Plaintiff Alleges It Fully Paid the Liabilities on the 2003-2004 Lien on May 10, 2005**

46.    On May 10, 2005, IRS Revenue Officer Sobrevilla met with Plaintiff's representatives regarding taxes and penalties owed for periods in 2003-2004. (Barrera, Day 1); (Hargis, Day 1); (*see* Johnson, Day 1).

47.    Plaintiff's representatives demonstrated to Sobrevilla how Plaintiff had attempted to pay all the liabilities owed for 2003-2004 on time.  (*See* Hargis, Day 1); (*see* Barrera, Day 1); (Johnson, Day 1); (Sobrevilla, Day 2).

48.    After a thorough analysis of Plaintiff's tax accounts, Sobrevilla determined that if the IRS reallocated Plaintiff's late tax payments for periods in 2003-2004 so that they would be properly filed, Plaintiff would only be left with an outstanding liability of $1,716.47 for periods in 2003-2004.  (*See* Hargis, Day 1); (*see* Barrera, Day 1); (Johnson, Day 1); (Sobrevilla, Day 2).

49.    Plaintiff's representatives and Sobrevilla agreed that Sobrevilla would reallocate the tax payments and that Plaintiff would provide an additional payment of the $1,716.47 so that the liabilities for tax periods in 2003-2004 would be extinguished.  (*See* Barrera, Day 1); (Sobrevilla, Day 2).

50.    Don Johnson, Jr. then delivered a check to the meeting and Johnson gave the check to Sobrevilla at the May 10, 2005 meeting in the amount of $1,716.47 to cover the outstanding balance. (*See* Hargis, Day 1); (Johnson, Day 1); (Barrera, Day 1); (Don Johnson, Jr., Day 3).

1.   *Sobrevilla Secured an Amended Return for the First Quarter of 2004*

51.   During a period including May 2005, Plaintiff's outside accountants at Long & Chilton reviewed all of Plaintiff's tax accounts, including those for periods in 2003-2004. (*See* Johnson, Day 2).

52.   The accountants would bring Johnson tax returns that required revisions. (Johnson, Day 2). Johnson signed and paid these amended returns. (*Id.*)

53.   Among these revised returns was an amended Form 941 return for the first quarter of 2004. (Def. Ex. 14 at p. 6); (Johnson, Day 2).   This amended return was filed on May 23, 2005. (Def. Ex. 14 at p. 6). Johnson signed the return as president of Plaintiff. (*Id.*); (Johnson, Day 2).

54.   Sobrevilla was personally involved in securing this return for the IRS and received the return at some point between May 23, 2005 and May 27, 2005. (*See* Sobrevilla, Day 3).

55.   The amended return created an additional liability of $5,734.82 on Plaintiff's first quarter 2004 Form 941 account. (Sobrevilla, Day 3); (Def. Ex. 1 at p. 182). This amount posted to Plaintiff's account on May 27, 2005. (*Id.*)

2.   *Sobrevilla Inputs the Adjustments and Reallocations into the IRS System*

56.   Sobrevilla could not input the reallocations and adjustments during the May 10, 2005 meeting because he could not access the IRS computer system from Plaintiff's office. (Barrera, Day 1); (*see* Sobrevilla, Day 2).

57.   Following the meeting, each day until May 27, 2005, Sobrevilla worked on the adjustments and reallocations to Plaintiff's account that had been agreed to at the May 10, 2005 meeting (Sobrevilla, Day 2).

11

58.    On May 27, 2005, Sobrevilla sent Plaintiff a letter with his analysis of Plaintiff's liabilities

for periods including those covered by the 2003-2004 lien. (*See* Pl. Ex. 54). The letter

stated, in part:

> As agreed, I have completed the analysis of your account and have
> made all the necessary adjustments that include transfers of
> erroneously applied credits, adjustments and abatements of penalties
> and interest. The purpose of this letter is to provide you [Plaintiff],
> as close as possible, a breakdown of the remaining liability. (Pl. Ex.
> 54).

59.    The May 27, 2005 letter showed that Plaintiff: (1) had a $0 balance for its first quarter 2003

Form 941; (2) owed $3,805.73 for its second quarter 2003 Form 941; (3) owed $252.05 for

its third quarter 2003 Form 941; (4) had a positive account balance (i.e., the IRS owed

Plaintiff money) of $1,716.47 for its fourth quarter 2003 Form 941; and (5) had another

positive account balance of $3,959.42 for its first quarter 2004 Form 941. (Pl. Ex. 54).

60.    Totaling these liabilities and positive balances gave Plaintiff an overall positive balance for

tax periods in 2003-2004 of $1,618.11 on May 27, 2005. (*See* Pl. Ex. 54).

61.    Sobrevilla does not recall including the additional liability from the amended return for the

first quarter of 2004 as a part of the analysis and adjustments documented in his May 27,

2005 letter to the Plaintiff, even though Sobrevilla personally secured this return prior to the

time the letter was sent. (Sobrevilla, Day 3). Sobrevilla testified the additional assessment

of $5,734.82 would create liabilities on the 2003-2004 lien not addressed in the May 27,

2005 letter. (*See id.*)

62.     Sobrevilla could not release the lien through the IRS system until all the periods for the
        2003-2004 lien registered as "status 12." (Sobrevilla, Day 2, Day 3). A "status 12" indicator
        means a tax account is zeroed out or fully paid. (*Id.* at Day 3).

63.     Through an IRS clerical error some of the transfers and adjustments Sobrevilla and Plaintiff
        agreed upon on May 10, 2005 were never made. (Sobrevilla, Day 3). The adjustments
        Sobrevilla said had already been made in his May 27, 2005 letter still have not been
        completed. (*Id.*)

        3.     *The IRS Conducted a Combined Annual Wage Reconciliation on Plaintiff's
               Tax Accounts in June 2005*

64.     Prior to June 13, 2005, the IRS conducted a combined annual wage reconciliation on
        Plaintiff's tax accounts, including Plaintiff's fourth quarter 2003 Form 941 account.
        (Sobrevilla, Day 3).

65.     During a combined annual wage reconciliation, the IRS matches Social Security wages, W2
        forms and W3 forms submitted to the Social Security Administration with the payroll tax
        returns submitted by the taxpayer to the IRS. (Sobrevilla, Day 3).

66.     If the Social Security records and payroll tax returns do not match, the IRS sends out a notice
        advising the taxpayer that the figures do not match up. (Sobrevilla, Day 3). The IRS then
        proposes an adjustment to Plaintiff's tax accounts. (*Id.*)

67.     If the taxpayer does not respond to the proposed IRS adjustment, the IRS makes the
        adjustment based on its prior reconciliation. (Sobrevilla, Day 3).

68.     As a result of the combined annual wage reconciliation procedure stated above, the IRS
        assessed additional tax and interest of $5,735.62 and penalties of $1,849.54 against Plaintiff

on June 13, 2005 for the fourth quarter of 2003 Form 941 account.  (Def. Ex. 1 at pp. 175-76); (Sobrevilla, Day 3).

69.    Statutory notice went out regarding this assessment on March 6, 2006.  (Sobrevilla, Day 3); (*see* Def. Ex. 1 at pp. 175-76).  It is unclear whether this notice informed Plaintiff of the discrepancy between the Social Security records and Plaintiff's payroll records or whether the notice was of the final adjustment to Plaintiff's account based on the reconciliation by the IRS.

### 4.    *Plaintiff Filed a Request for Certificate of Release of Lien*

70.    On June 24, 2005, Plaintiff filed a request for certificate of release of the 2003-2004 lien.  (Pl. Ex. 58).  The request was submitted to the District Director in Cincinnati, marked for the attention of the "Chief, Special Procedures Function."  (*Id.*)  The name and address of Plaintiff were provided as well as a copy of the Notice of Federal Tax Lien for the 2003-2004 lien.  (*Id.*)

71.    The request for certificate of release of lien listed as the grounds for release that: "[on] May 10, 2005, Mr. Don Johnson, Sr., President of the taxpayer, hand delivered a check to Ricardo Sobrevilla in the approximate amount of $1,716.47 in complete payment of *ALL* outstanding Form 940 and Form 941 taxes owed by the taxpayer[] for the years and all quarters within 2003 and 2004."  (Pl. Ex. 58) (emphasis in original).

72.    Plaintiff did not include proof of its payment of $1,716.47 with its request for certificate of release of lien.  (*See* Pl. Ex. 58).

5.    *Plaintiff Files its CDP Appeal*

73.    Plaintiff filed a request for a Collection Due Process ("CDP") hearing pursuant to 26 U.S.C.

§ 6320 and Tres. Reg. § 301.6320-1 on June 9, 2005 claiming that Plaintiff was not given

proper notice prior to the filing of liens for the 1999-2002 and 2003-2004 periods and that

the liabilities on the liens were invalid. (*See* Pl. Ex. 56).

74.    Pursuant to IRS procedures, filing a CDP appeal had the internal effect of removing

Sobrevilla's jurisdiction over Plaintiff's tax accounts. (Pl. Ex. 57)

75.    On February 28, 2006, IRS Appeals Officer Christopher Darling ("Darling") issued his CDP

determination, sustaining the filing of both the 1999-2002 lien and the 2003-2004 lien. (Pl.

Ex. 75).  He found that there were outstanding liabilities for periods covered by each lien and

that the IRS gave Plaintiff proper statutory notice pursuant to 26 U.S.C. § 6321 prior to filing

each lien. (*Id.*)

76.    The IRS has not released either the 2003-2004 lien or the 1999-2002 lien. (Johnson, Day 1);

(Hargis, Day 1).

**II.    PROCEDURAL HISTORY OF THIS LITIGATION**

77.    Plaintiff filed a Complaint against Defendant United States of America ("Defendant") on

March 21, 2006. (Docket No. 1).

78.    The Complaint stated claims for:

(i)    the refund of internal revenue taxes for periods in 1999-2002;

(ii)   judicial review of the CDP determination on the 1999-
2002 lien and 2003-2004 lien;

(iii)    civil damages for failure to release the 1999-2002 lien and 2003-2004 lien pursuant to 26 U.S.C. § 7432; and

(iv)    civil damages for unauthorized collection actions under 26 U.S.C. § 7433.  (Docket No. 1).

79.    Plaintiff and Defendant filed motions for summary judgment on January 28, 2007 and January 29, 2007, respectively.  (Docket Nos. 13, 14).  Magistrate Judge Black issued a Report and Recommendation with regard to both motions for summary judgment on April 26, 2007.  (Docket No. 23).

80.    This Court issued an order on July 25, 2007 adopting the Report and Recommendation of the Magistrate Judge, denying Plaintiff's Motion for Summary Judgment and granting in part and denying in part Defendant's Motion for Summary Judgment.  (Docket No. 54); (*see* Docket No. 23).

81.    The Court granted summary judgment to Defendant on Plaintiff's claims for:

(i)    refunds of internal revenue taxes for periods in 1999-2002;

(ii)    judicial review of the CDP determination for tax years 1999-2002; and

(iii)    damages based on improper tax collection activities regarding the filing of the 1999–2002 lien and 2003-2004 lien pursuant to 28 U.S.C. § 7433.  (Docket No. 54); (*see* Docket No. 23).

82.    Plaintiff's refund claim was denied because Plaintiff failed to show reasonable cause for the abatement of penalties assessed for periods from 1999 to 2002.  Penalties were assessed against the Plaintiff because it failed to file its employment tax reports and deposit tax payments.  Plaintiff failed to timely file and deposit its taxes because Ezequiel failed to properly do his job and the office manager failed to properly supervise Ezequiel.  Courts

16

have consistently held that the failure of a taxpayer's employee to file or pay taxes does not establish reasonable cause. (Docket Nos. 54, 62); (*see* Docket No. 23); *see McMahan v. Commissioner*, 114 F.3d 366, 371 (9th Cir. 1997); *Conklin Bros. of Santa Rosa, Inc. v. United States*, 986 F.2d 315, 318 (9th Cir. 1993); *Dogwood Forest Rest Home, Inc. v. United States*, 181 F. Supp. 2d 554, 560-61 (E.D.N.C. 2000).

83.   The Court also denied Plaintiff's CDP appeal for 1999-2002, which claimed that the IRS did not follow proper statutory procedures prior to the filing of the 1999-2002 lien against the Plaintiff. On summary judgment, this Court held it was not an abuse of discretion for IRS Appeals Officer Darling to sustain the filing of the lien against Plaintiff covering periods in 1999-2002. (Docket No. 54). The IRS properly assessed tax liabilities and penalties against Plaintiff for those periods. Plaintiff received notices for those assessments and failed to pay the penalties within the required time. Under 26 U.S.C. § 6321, this was all that was required for the IRS to file a lien. Plaintiff also received notice of the filing of the liens as required by 26 U.S.C. § 6320. (Docket No. 54); (*see* Docket No. 23); (Pl. Ex. 75).

84.   This Court also granted summary judgment on Plaintiff's 28 U.S.C. § 7433 claim. Plaintiff attempted to file an administrative claim pursuant to 28 U.S.C. § 7433 claiming that the filings of the 1999-2002 and 2003-2004 liens were unauthorized collection actions. This Court granted summary judgment to the Defendant on that claim because Plaintiff failed to exhaust all administrative remedies as required by 26 U.S.C. § 7433(d)(1). Plaintiff failed to file its claim with the proper authority and failed to include a specific dollar amount for the claim as required by Treas. Reg.§ 301.7433-1 (as amended in 1998). (Docket No. 54); *see Amwest Sur. Ins. Co. v. United States*, 28 F.3d 690, 696 (7th Cir. 1994) (holding the

17

procedural requirements for filing an administrative claim under the Treasury Regulations are to be strictly construed); *Venen v. United States*, 38 F.3d 100, 103 (3d Cir. 1994).

85. The only claims remaining after summary judgment were:

    (i)    Plaintiff's claim for civil damages under 26 U.S.C. § 7432 for failure to release the 1999-2002 lien and 2003-2004 lien; and

    (ii)    judicial review of the CDP determination on the 2003-2004 lien. (Docket No. 54).

86. To prove a claim for failure to release a federal tax lien pursuant to 26 U.S.C. § 7432, Plaintiff must establish that an officer or employee of the IRS knowingly or negligently failed to release a lien even though (1) the liability on the lien had been satisfied; (2) the lien was unenforceable; or (3) the Plaintiff furnished a bond that was accepted by the IRS conditioned upon the payment of the amount covered by the liens. *See* 26 U.S.C. §§ 6325 (1998), 7432 (1988). To recover damages under 26 U.S.C. § 7432, Plaintiff must prove actual, direct economic damages "which, but for the actions of the defendant" in negligently failing to release the lien, would not have been sustained. 26 U.S.C. § 7432.

87. This Court has *de novo* judicial review of a CDP determination made by an IRS Appeals Officer where the validity of the underlying tax liability is properly at issue. *Sego. v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181-82 (2000). This Court must consider: (1) whether the IRS met the requirements of any applicable law or administrative procedure prior to filing the notice of federal tax lien; (2) any issues appropriately raised by the taxpayer relating to the unpaid tax; (3) challenges to the existence or amount of the tax liability; (4) offers of collection alternatives; and (5) whether the continued existence of the filed notice of federal tax lien represents a balance

18

between the need for the efficient collection of taxes and the legitimate concern of the taxpayer that any collection be no more intrusive than necessary." Treas. Reg. §§ 301.6320-1(e); 301.6320-1(e), Q&A (E1) (as amended in 1999).

88.    This Court held a three-day bench trial on those two sets of claims beginning September 11, 2007.

89.    Plaintiff now also requests reconsideration this Court's denial of its claim for unauthorized collection action pursuant to 26 U.S.C. § 7433 as well as this Court's denial of Plaintiff's refund claim for the periods covered by the 1999-2002 lien. (Pl. Findings at pp. 18, 25).

### III.    PLAINTIFF'S § 7432 CLAIM FOR FAILURE TO RELEASE THE 1999-2002 LIEN

90.    The IRS must release a lien if: (1) the liability has been satisfied; (2) the lien is unenforceable; or (3) the taxpayer furnishes a bond to the IRS and the bond is accepted by the IRS. 26 U.S.C. § 6325.

91.    "If any officer or employee of the Internal Revenue Service, knowingly, or by reason of negligence, fails to release a lien under [26 U.S.C. § 6325] on property of the taxpayer, such taxpayer may bring a civil action for damages against the United States." 26 U.S.C. § 7432.

### A.    Burden of Proof

92.    The taxpayer has the burden of proof on claims under 26 U.S.C. § 7432. *Bilzerian v. United States*, 86 F.3d 1067, 1070 (11th Cir. 1996); *Miller v. United States*, 813 F. Supp. 715, 726 (N.D. Cal. 1992).

93.    Plaintiff nonetheless claims that the burden of proof with respect to all factual issues regarding liability under 26 U.S.C. § 7432 shifts to the Defendant because of 26 U.S.C. § 7491. (Pl. Findings at p. 5).

94.   The burden shifts to the United States in any court proceeding if the taxpayer "introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B." 26 U.S.C. § 7491 (1998).

95.   Subtitle A of the Internal Revenue Code governs income taxes. 26 U.S.C. §§ 1, *et seq.* (2000). Subtitle B of the Internal Revenue Code governs estate and gift taxes. 26 U.S.C. §§ 2001, *et seq.* (2001). Subtitle C of the Internal Revenue Code governs employment taxes. 26 U.S.C. §§ 3101, *et. seq.* (1983).

96.   Since the burden shifting provision of 26 U.S.C. § 7491 only applies to Subtitles A and B of the Internal Revenue Code, the provision does not apply to cases involving employment taxes. *See Charlotte's Office Boutique v. C.I.R.*, 121 T.C. 89, 102 (2003); *Joseph M. Grey Public Accountant, P.C. v. C.I.R.*, 119 T.C. 121, 123, n.2 (2002). Cases involving penalties assessed for failure to pay employment taxes and whether Plaintiff established reasonable cause for those penalties are also outside the scope of the burden shifting provision of 26 U.S.C. § 7491. *See Bell v. United States*, No. 2:99-cv-1995, 2000 U.S. Dist. LEXIS 15108, at *6 (E.D. Ca. Sept. 13, 2000).

97.   All of the taxes, interest and penalties at issue in this case relate to employment taxes governed by Subtitle C. (*See* Complaint, Docket No. 1). This Court therefore finds that the burden shifting provision of 26 U.S.C. § 7491 does not apply to Plaintiff's claims.

98.   The burden remains on Plaintiff to prove that the IRS "knowingly, or by reason of negligence" failed to release the 1999-2002 lien in violation of 26 U.S.C. § 7432. *See* 26 U.S.C. §§ 6235, 7432; *see also* 26 U.S.C. § 7491.

**B.**   **Satisfaction of the Liabilities on the 1999-2002 Lien**

     1.   *Abatement of Penalties to Satisfy the Liabilities in the 1999-2002 Lien*

99.   During trial and throughout Plaintiff's Proposed Findings of Fact and Conclusions of Law

(Docket No. 64), Plaintiff appears to try to re-litigate the issue of whether the penalties

imposed for the period 1999-2002 should have abated for reasonable cause.

100.   As a part of its order on summary judgment, this Court denied Plaintiff's refund claim for

periods covered by the 1999-2002 lien (essentially a request for an abatement of penalties)

for failure to show reasonable cause. (Docket Nos. 54, 62); *see supra* Section II.  Plaintiff

could not demonstrate reasonable cause when its employee, Ezequiel, simply failed to file

Plaintiff's returns and pay Plaintiff's taxes and no supervisor caught Ezequiel's failure. (*Id.*)

101.   Plaintiff requests this Court overturn this previous holding and appears to claim that if these

penalties are abated, the liabilities on the 1999-2002 lien would be satisfied and the lien must

be released. (*See* Pl. Findings at pp. 1-3).

102.   The taxpayer has a heavy burden when establishing it had reasonable cause not to file, pay

or deposit payroll taxes. *Staff IT, Inc. v. United States*, 482 F.3d 792, 801-02 (5th Cir. 2007).

103.   There is no reasonable cause when the failure to pay or file returns is the result of inaction

by one of Plaintiff's own employees. *See McMahan v. Commissioner*, 114 F.3d 366, 371

(9th Cir. 1997) ("a taxpayer has an affirmative non-delegable duty to ensure that the

appropriate forms . . . are actually filed by the statutory deadline"); *Conklin Bros. of Santa*

*Rosa, Inc. v. United States*, 986 F.2d 315, 318 (9th Cir. 1993); *In re American Biomaterials*

*Corp.*, 954 F.2d 919, 927 (3rd Cir. 1992); *Bell v. United States*, No. 2:99-cv-1995, 2000 U.S.

Dist. LEXIS 15108, *6 (E.D. Ca. Sept. 11, 2000); *Dogwood Forest Rest Home, Inc. v. United States*, 181 F. Supp. 2d 554, 560-61 (E.D.N.C. 2000); (*see also* Docket Nos. 54, 62).

104.   Plaintiffs cite *In re American Biomaterials Corp.*, 954 F.2d 919, 927 (3rd Cir. 1992) in support of its argument that reasonable cause exists to abate the penalties assessed against Plaintiff for periods in 1999-2002. The *American Biomaterials* court held that "when the officers of a corporation commit criminal acts [e.g., embezzlement] against the corporation" and these crimes are "prove[n] to be the cause of the corporation's failures to fulfill its duties under the tax code[,]" the corporation may be able to establish reasonable cause. 954 F.2d at 927.

105.   In *American Biomaterials*, two employees, MacKay, the president, Chief Executive Officer and chairman of the board of directors, and Russell, Chief Financial Officer and treasurer of the corporation, embezzled funds from the corporation. 954 F.2d at 922. These were the only officers responsible for filing tax returns and ensuring payment of those taxes. *Id.* Their embezzlement scheme, combined with their positions within the company, "incapacitated the corporation," rendering the corporation unable to file its tax returns and pay its taxes. *Id.* at 921.

106.   While holding that the criminal actions of MacKay and Russell enabled the corporation to establish reasonable cause, the *American Biomaterials* court also noted that "[i]f a corporation has lax internal controls or fails to secure competent external auditors to ensure the filing of timely tax returns and deposit and payment of taxes, it fails to show reasonable cause or absence of willful neglect and is itself liable for statutory penalties . . ." 954 F.2d at 927 & 927, n.8.

22

107.   Plaintiff asserts that its particular situation is more compelling than the situation from *American Biomaterials* and requests this Court to reconsider its decision to deny Plaintiff's refund claim (i.e., abate the penalties for 1999-2002).

108.   During trial, Plaintiff never alleged nor presented any evidence to show that Ezequiel, or any other employee of Plaintiff, engaged in any criminal action.  In fact, Plaintiff provided no explanation or testimony at all as to why Ezequiel was not properly filing and paying Plaintiff's employment taxes.

109.   Ezequiel simply neglected to perform the duties assigned to him as Plaintiff's employee to file returns and pay Plaintiff's employment taxes. *See supra* Section I at ¶¶ 5-9.  Plaintiff's office manager should have been supervising Ezequiel's filing of the employment tax returns and deposits, but failed to recognize and correct Ezequiel's failure. *See supra* Section I at ¶¶ 6-9; (Pl. Ex. 6).

110.   Plaintiff does not allege or provide any evidence that Ezequiel's failure to file or pay was part of some a criminal scheme to defraud the Plaintiff as was the case in *American Biomaterials*. *See* 954 F.2d at 921-22.

111.   Plaintiff did not provide any evidence that Ezequiel's failure to pay involved a plot with his supervisor in a manner that might "incapacitate" Plaintiff from adequately supervising Ezequiel's actions as was the case in *American Biomaterials*.  *See In re American Biomaterials Corp.*, 954 F.2d at 921-22.

112.   Plaintiff, rather than present a more compelling situation than *American Biomaterials*, instead falls squarely into the category of having "lax internal controls or fail[ing] to secure competent external auditors" that even the court in *American Biomaterials* stated was

insufficient to establish reasonable cause. *See* 954 F.2d at 927; *see also McMahan v. Commissioner*, 114 F.3d 366, 371 (9th Cir. 1997); *Conklin Bros.*, 986 F.2d 315, 318 (9th Cir. 1993); *Bell v. United States*, No. 2:99-cv-1995, 2000 U.S. Dist. LEXIS 15108, at *6; *Dogwood Forest Rest Home, Inc. v. United States*, 181 F. Supp. 2d 554, 560-61 (E.D.N.C. 2000).

113.    Plaintiff failed to establish reasonable cause for the abatement of penalties assessed for periods in 1999-2002. This Court re-affirms its decision from summary judgment denying Plaintiff's refund claims and request for the abatement of penalties for 1999-2002.

114.    Plaintiff has not paid the penalties and some accrued interest covered by the 1999-2002 lien. (*See* Johnson, Day 2); (Pl. Ex. 78). By re-affirming the decision to deny Plaintiff's claim for abatement, these penalties and interest still remain outstanding liabilities covered by the 1999-2002 lien.

            2.      *Failure to Receive Notice of its Delinquency from the IRS*

115.    Plaintiff also presented testimony to support its claim that Plaintiff is entitled to abatement for reasonable cause because the IRS did not notify Plaintiff of Plaintiff's failures to file employment tax returns, timely pay its taxes, and deposit its taxes. (*See* Hargis, Day 1); (Johnson, Day, 1, Day 2). In other words, Plaintiff asserts that the IRS was under some ongoing duty to inform Plaintiff that the Plaintiff was not filing tax returns or paying its taxes.

116.    "When a return of tax is required . . . the [taxpayer] required to make such return, shall, without assessment or notice and demand from the Secretary, pay such tax . . . ." 26 U.S.C. § 6151. Plaintiff was responsible for filing its returns and paying its taxes on time and

24

remained responsible to file those return and taxes after it missed the proper return deadline. The IRS does not have to provide the Plaintiff with any notice that Plaintiff failed to file its return or pay its taxes.

117.  The lack of notification from the IRS that Plaintiff was failing to comply with its tax obligations therefore does not create reasonable cause to abate the penalties assessed for periods in 1999-2002.

        3.    *Conclusion*

118.  Plaintiff did not provide any evidence or case law to persuade this Court to reconsider its finding on summary judgment that no reasonable cause existed to abate the penalties for 1999-2002.

119.  There are still outstanding liabilities on the 1999-2002 lien. (*See* Johnson, Day 2). Plaintiff thus failed to demonstrate that the liabilities on the 1999-2002 lien have been satisfied and cannot support a 26 U.S.C. § 7432 claim on this ground.

    C.    **Plaintiff's Claim the 1999-2002 Lien is Unenforceable**

        1.    *Procedural Considerations under 26 U.S.C. §§ 6320, 6321*

120.  IRS Appeals Officer Darling determined during Plaintiff's CDP appeal that the procedures set out in 26 U.S.C. § 6321 were met prior to the filing of the 1999-2002 lien. (Pl. Ex. 75). This Court held that Darling's finding was not an abuse of discretion and upheld the determination of the IRS Appeals Office on summary judgment. (Docket No. 54); (*see* Docket No. 23).

121.  Nevertheless, Plaintiff appears to re-litigate the issue of whether it received the required notice and demand for the amounts on the 1999-2002 lien as required by 26 U.S.C. § 6321.

(*See* Sobrevilla, Day 2).[3]   Failure to follow statutory procedures prior to the filing of the 1999-2002 lien may make the lien unenforceable.  *See* 26 U.S.C. §§ 6321 (1954), 6325.

122.   Section 6321 requires that, prior to filing a lien, the IRS must: (1) make an assessment of the tax, including interest, additional amounts, and penalties owed by the taxpayer; (2) notify the taxpayer of the assessment; and (3) give the taxpayer time to pay the amount assessed.  26 U.S.C. § 6321.  No other requirements must be met prior to the filing of a lien by the IRS. *See id.*

123.   The IRS must also send notice of the filing of a lien within five business days after the filing of notice of the lien. 26 U.S.C. § 6320(a)(2)(C) (1998).  Plaintiff admits to receiving this notice. (Pl. Ex. 56).[4]

124.   Despite this Court's finding on summary judgment to the contrary, Plaintiff claims the Defendant cannot demonstrate Plaintiff ever received notice pursuant to 26 U.S.C. § 6321 because the IRS Certificate of Assessments and Payments (the "IRS transcripts") are

---

[3] The time to litigate these issues and to bring forth evidence in support of Plaintiff's position was when the Motions for Summary Judgment were pending – not after they have been ruled upon.  Plaintiff presented evidence regarding the accuracy of the IRS Certificate of Assessments and Payments and the effect of a Form 834 appeal.  Since these issues are applicable to this Court's consideration of not only the 1999-2002 lien, but also live issues involved in this Court's analysis of the 2003-2004 lien, this Court will address Plaintiff's presentation of evidence on both issues as a part of this section. This Court, however, finds that Plaintiff has not presented any evidence that causes this Court to change its decision, made on summary judgment, that the Defendant followed all statutory procedures pursuant to 26 U.S.C. § 6321 prior to the filing of the 1999-2002 lien.

[4] Plaintiff raises issues regarding the date on the notice of filing of the federal tax lien and the impact of this date on Plaintiff's filing of its CDP appeal.  (Trial Tr., Day 2, Day 3).  The failure to send proper notice after the filing of the lien does not invalidate the lien, but rather extends the time in which the taxpayer may file a CDP appeal.  Treas. Reg. § 301.6320-1(a)(2), Q&A (A12) (as amended in 1999).  Plaintiff was able to file its CDP appeal within thirty (30) days of receiving notice of the filing of the federal tax lien.  Since Plaintiff's receipt of notice has no bearing on the enforceability of the lien and Plaintiff was able to file a CDP appeal within thirty days, this Court finds the issues Plaintiff raises regarding the receipt of notice under 26 U.S.C. § 6320 to have no bearing on Plaintiff's 26 U.S.C. § 7432 claim or any of Plaintiff's other claims.

inaccurate and Plaintiff's appeal of the IRS denial of penalty abatement required the Defendant to resend notice and demand under 26 U.S.C. § 6321 prior to the filing of a lien.

2.    *Providing Notice Pursuant to 26 U.S.C. § 6321*

125.   The IRS Certificate of Assessments and Payments attest to all the transactions that have posted to a taxpayer's account for a particular period. (*See* Sobrevilla, Day 2). These transcripts are the official records of the IRS. (*Id.*).

126.   It is well-established that the IRS transcripts are presumptive proof that the IRS gave notice of the assessments and made demand for payment pursuant to 26 U.S.C. § 6321. *See, e.g., Geiselman v. United States*, 961 F.2d 1, 6 (1st Cir. 1992).

127.   The IRS transcripts clearly show that taxes, including interest and penalties, were assessed against Plaintiff for the periods covered on the 1999-2002 lien and that Plaintiff was sent notices of assessments for these periods. (*See, e.g.*, Def. Ex. 1 at pp. 15, 32). Plaintiff's representative admits that assessments were made. (Barrera, Day 1). Plaintiff also requests this Court make a finding of fact that "[i]n 2003 Plaintiff began receiving penalty notices . . ." (Pl. Findings, p. 19). Johnson also testified that Plaintiff received penalty notices. (Johnson, Day 2).

128.   Plaintiff, nevertheless, states that the testimony of  IRS Revenue Officer Sobrevilla "destroyed" the integrity of the IRS transcripts regarding the IRS's notice and demand to Plaintiff for assessments made for periods in 1999-2002. (Pl. Findings, p. 12).

a.    *Plaintiff's Impeachment of the IRS Transcripts*

129.   Plaintiff presented testimony in an attempt to demonstrate that various indicators on the IRS transcripts signify events that did not actually occur or did not occur on the date designated

in the IRS transcripts, thereby destroying the integrity of the transcripts. (*See, e.g.*, Trial Tr., Day 2). Plaintiff attacked the transcripts generally, frequently jumping between periods covered by the 1999-2002 lien and 2003-2004 lien. It appears Plaintiff sought to impeach the IRS transcripts generally, so that this Court would find the entire transcript was false, and that the transcripts could not be relied on as presumptive proof of IRS compliance with the statutory requirements of 26 U.S.C. § 6321.

i.     *The "Federal Tax Lien" Indicator*

130.   The IRS transcript for Plaintiff's third quarter 2003 Form 941 tax account lists the indicator "Federal Tax Lien" on April 29, 2005. (Def. Ex. 1 at pp. 164, 173). Among the many parts of the IRS transcript attacked, Plaintiff maintained that this indicator was incorrect because the 2003-2004 lien was not filed until May 9, 2005. (Trial Tr., Day 2, Day 3).

131.   The IRS transcript for Plaintiff's third quarter 2001 and fourth quarter 2001 Form 941 tax accounts list the indicator "Federal Tax Lien" on May 6, 2005. (Def. Ex. 1 at pp. 106, 114). Plaintiff maintained these indicators were also incorrect because the 1999-2002 lien was not filed until May 20, 2005. (Trial Tr., Day 2, Day 3).

132.   Plaintiff stated that these alleged inaccuracies "confirmed the transcripts are incorrect" and that the transcripts should not be "entitled to any prima facie evidentiary value." (Trial Tr., Day 2).

133.   IRS Revenue Officer Sobrevilla repeatedly explained that the date listed on the transcript next to the "Federal Tax Lien" indicator is the approximate date that the lien was requested. (Sobrevilla, Day 2, Day 3). The "Federal Tax Lien" indicator does not state the date the federal tax lien was actually filed. (*Id.* at Day 3).

28

134.  Sobrevilla testified that the date he requests a lien is different from the date the lien is filed
      with the Texas Secretary of State. (Sobrevilla, Day 2). Liens requests are batched by the IRS
      system and then sent to the Texas Secretary of State when there are enough liens to justify
      sending a check to cover the lien filing fees. (*Id.*) The IRS transcript does not show the date
      the lien was filed with the Texas Secretary of State. (*Id. at* Day 3).

135.  Sobrevilla requested that the 2003-2004 lien be filed on April 28, 2005. (Sobrevilla, Day 2).
      A lien indicator on April 29, 2005 fits within Sobrevilla's explanation of that the indicator
      represents the approximate date a request for filing of a lien was made.

136.  Plaintiff provided no evidence to show why Sobrevilla's explanation was false or was not
      a reasonable explanation for the presence of the indicator.

137.  As presented, Plaintiff's evidence regarding the "Federal Tax Lien" indicator does not
      damage the integrity of the IRS transcripts.

        ii.     *Plaintiff Counsel's Failure to Receive Notice of the Filing of*
               *the Lien*

138.  Plaintiff asserts that any transcript indicator showing that Plaintiff was sent notice of the
      filing of the lien pursuant to 26 U.S.C. § 6320 was incorrect because Plaintiff's counsel never
      received notice of the filing of the lien pursuant. (*See* Trial Tr., Day 3).

139.  The only person entitled to receive notice pursuant to 26 U.S.C. § 6320 of the filing of a lien
      is the taxpayer named on the Notice of Federal Tax Lien. Treas. Reg. § 301.6320-1(a)(2),
      Q&A (A1) (as amended in 1999). "Person" is defined as the person liable to pay the tax due
      after notice and demand who refuses or neglects to pay the tax due (i.e., the taxpayer). *Id.*
      The taxpayer, and only the taxpayer, is entitled to notice. *See id.* at § 301.6320-1(a)(2), Q&A

(A7) (as amended in 1999). Therefore, only the Plaintiff and not Plaintiff's counsel was entitled to notice under 26 U.S.C. § 6320.

140.   While sending notice to counsel may have been appropriate, and perhaps even more professional, Plaintiff's counsel was not entitled to notice pursuant to 26 U.S.C. § 6320 and Plaintiff's evidence that it received notice and that its counsel did not, therefore, does not diminish the integrity of the IRS transcripts.

### iii.   The "Statutory Notice of Intent to Levy" Indicator

141.   Several of the IRS transcripts involved in this case list the indicator "Statutory Notice of Intent to Levy." (*See* Trial Tr., Day 3).

142.   Plaintiff avers that such notices of intent to levy were never sent.[5] (*Id.*)

143.   Sobrevilla could not testify by looking at the transcript as to what the references to statutory notices of intent to levy referred. (Sobrevilla, Day 3).

144.   Plaintiff's concerns regarding this indicator focused on the fact that notices of intent to levy were sent out while Sobrevilla was in charge of the case, but Sobrevilla never requested those notices and had no knowledge of those notices. (Trial Tr., Day 3).

145.   Sobrevilla testified that Revenue Officers are not the only IRS agents authorized to send out a statutory notice of intent to levy. (Sobrevilla, Day 3). The IRS Automated Collection System is also authorized to send out statutory notices of intent to levy and could have sent out these notices independent of Sobrevilla's work on Plaintiff's accounts. (*Id.*)

---

[5] This Court notes that statutory notices of intent to levy pursuant to 26 U.S.C. § 6331 have no bearing on the sending of statutory notice of assessments made by the IRS prior to the filing of a lien pursuant to 26 U.S.C. § 6321. Whether or not these notices of intent to levy were sent or received has no bearing on Plaintiff's claim regarding the release of liens under 26 U.S.C. § 7432. Plaintiff's argument concerning the indicator "Statutory Notice of Intent to Levy" is another attack by Plaintiff on the integrity of the IRS transcripts as a whole.

146.   Plaintiff did not present any evidence to show why Sobrevilla's alternate explanation for the presence of these indicators was false.

147.   As presented, Plaintiff's argument regarding the "Statutory Notice of Intent to Levy" indicator does not overcome the well-established presumption of the integrity of the IRS transcripts.

iv.   *The "Legal Suit" Indicator*

148.   Plaintiff also contends that the IRS transcripts were inaccurate for listing a "Legal Suit" on June 13, 2005.  (Trial. Tr., Day 3); (*see* Def. Ex. 2 at p. 3).

149.   As entered on the IRS transcripts, a "Legal Suit" does not necessarily mean a lawsuit as it is understood in the context of litigation. (*See* Sobrevilla, Day 3).  The "Legal Suit" indicator could represent an account in bankruptcy, pending litigation, or a CDP appeal. (*See id.*)

150.   Plaintiff stated that even if "Legal Suit" could represent a CDP appeal, Plaintiff filed its CDP appeal on May 27, 2005, not June 13, 2005 as listed by the indicator.  (Trial Tr., Day 3).

151.   Sobrevilla testified that the "Legal Suit" indicator demonstrates when the CDP appeal posts to the IRS system, which is usually not the date the CDP request was filed. (*See* Sobrevilla, Day 3).   Plaintiff's CDP appeal did not post on May 27, 2005, the day it was filed or sent to the IRS.  (*See id.*)

152.   Plaintiff did not produce any evidence to demonstrate why Sobrevilla's explanation for the indicator appearing on June 13, 2005 instead of May 27, 2005 was false.

153.   As presented, Plaintiff's argument regarding the "Legal Suit" indicator does not damage the integrity of the IRS transcripts.

31

v.     *Conclusion*

154.   This Court disagrees with Plaintiff's contention that it "destroyed" the integrity of the IRS transcripts.  None of Plaintiff's attempts to impeach the IRS transcripts were particularly effective and most were countered by a reasonable explanation from IRS Revenue Officer Sobrevilla.

155.   Most notably, Plaintiff did not present any evidence in reference to the integrity of the indicators actually applicable to the live issues in this case: the indicators that assessment was made and notice sent pursuant 26 U.S.C. § 6321.  These are the only indicators actually relevant to Plaintiff's 26 U.S.C. § 7432 claim.

156.   Plaintiff has not overcome the well-established presumption that a transcript notation that statutory notice was sent to the Plaintiff satisfies the statutory requirements of 26 U.S.C. § 6321.  *See Geiselman v. United States*, 961 F.2d 1, 6 (1st Cir. 1992).

157.   Since the IRS transcripts clearly indicate that Plaintiff received statutory notice for the periods covered by the 1999-2002 lien, this Court reaffirms its holding from summary judgment that Defendant complied with the statutory requirements of 26 U.S.C. § 6321 prior to filing the 1999-2002 lien.

  b.     *Filing Liens During Plaintiff's Appeal of the Denial of Penalty Abatement*

158.   Plaintiff also asserts that its appeal of the IRS denial of Plaintiff's request for the abatement of penalties required the IRS to reissue statutory notice pursuant to 26 U.S.C. § 6321.  (Pl. Findings, p. 13).

159. On January 14, 2004, Plaintiff filed a Form 843 request for the abatement of penalties, including periods from 1999 to 2002. (Pl. Ex. 6).

160. Plaintiff's request for abatement of penalties was denied by IRS Revenue Officer Alice Rios ("Rios") on October 14, 2004 for failure to demonstrate reasonable case. (Pl. Ex. 32). Rios' determination was forwarded to the Appeals Division for review. (*Id.*)

161. The IRS Appeals Division formally denied the appeal on May 9, 2005. (Pl. Ex. 51).

162. Plaintiff asserts that the IRS had to resend notice of Plaintiff's tax liability after this final ruling May 9, 2005 because the amounts Plaintiff owed were not known until the IRS completed its analysis of Plaintiff's appeal. (Pl. Findings, p. 13). Plaintiff claims that the letter from Sobrevilla dated May 27, 2005 was the first notice and demand for payment. (*See* Pl. Ex. 54). Plaintiff's argument follows that any lien filed prior to June 6, 2005 (which would include all liens at issue in this case) would be invalid and unenforceable for failure to provide notice and demand prior to the filing of the lien. *See* 26 U.S.C. § 6321.

163. Plaintiff provides this Court no authority to show that appealing the denial of a Form 843 request for abatement of penalties requires the IRS to resend statutory notices pursuant to Section 6321, especially when the appeal does not change the amounts in question.[6]

164. The requirements of 26 U.S.C. § 6321 were met by the initial statutory notice and demand sent to the Plaintiff by the IRS. *See* 26 U.S.C. § 6321.

---

[6] In its summary judgment motion and during trial, Plaintiff appeared to confuse the statutory requirements regarding the sending of a final demand prior to levying assets pursuant to 26 U.S.C. § 6331 and the sending of statutory notice pursuant to 26 U.S.C. § 6321. A "final demand" is only necessary prior to *levying* the assets of a taxpayer, not prior to filing a lien. *Compare* 26 U.S.C. § 6321 *with* 26 U.S.C. § 6331. At points during trial, Plaintiff asserted that it should have been sent a final demand prior to the filing of a lien. On the second day of trial, however, Plaintiff acknowledged that the IRS did not need to send a "final demand" within the meaning of 26 U.S.C. §§ 6330, 6331 prior to filing liens. (*See, e.g.*, Trial Tr., Day 2). The sending of a final demand therefore does not enter this Court's analysis of the validity of the filing of liens against the Plaintiff.

165.   Plaintiff has given this Court no persuasive reason to reconsider its decision on summary judgment that the IRS met the requirements of 26 U.S.C. § 6321 through assessments and notices sent beginning in 2003.

166.   Since the IRS met the requirements of 26 U.S.C. § 6321 prior to filing the 1999-2002 lien, the 1999-2002 lien is enforceable.

**D.    Release of the 1999-2002 Lien Pursuant to 26 U.S.C. § 7432**

167.   There are three ways in which a Plaintiff can demonstrate that a lien should be released by the IRS: (1) the liabilities on the lien have been satisfied; (2) the lien is unenforceable; or (3) Plaintiff furnished a bond to the IRS which was accepted by the IRS.  26 U.S.C. § 6325.

168.   Plaintiff did not satisfy the liabilities on the 1999-2002 lien nor did it demonstrate that the 1999-2002 lien was unenforceable for failure to provide statutory notice.

169.   Plaintiff did not allege or present any evidence to show that it furnished a bond for the 1999-2002 lien that was accepted by the IRS.  (*See, e.g.*, Johnson, Day 1); (Barrera, Day 1); *see also* 26 U.S.C. § 6325.

170.   Plaintiff failed to carry its burden of proof on any of the three methods for showing that the 1999-2002 lien should have been released pursuant to 26 U.S.C. § 6325.  Because a claim under 26 U.S.C. § 7432 requires a violation of 26 U.S.C. § 6325, Plaintiff's claim regarding the release of the 1999-2002 lien fails. *See* 26 U.S.C. § 7432.

**IV.   PLAINTIFF'S § 7432 CLAIM FOR FAILURE TO RELEASE THE 2003-2004 LIEN**

171.   Plaintiff also filed a claim under 26 U.S.C. § 7432 regarding the failure of the IRS to release the 2003-2004 lien.  Plaintiff raises many of the same legal and factual arguments this Court just discussed regarding the 1999-2002 lien in Section III.

172.   Plaintiff states that the 2003-2004 lien should have been released because: (i) Plaintiff allegedly made an offer to furnish a bond that was rejected by the IRS; (ii) the lien was unenforceable due to the failure of the IRS to follow the procedural requirements of 26 U.S.C. §§ 6320 & 6321; or (iii) the liability covered by the 2003-2004 lien was satisfied on May 10, 2005. (*See* Pl. Findings, pp. 13-14).

A.   **Furnishing a Bond to Cover the Liabilities of the 2003-2004 Lien**

173.   A lien can be released if the taxpayer furnishes a bond to the IRS and that bond is accepted by the IRS.  26 U.S.C. § 6325.

174.   Johnson, on behalf of the Plaintiff, considered offering a bond on May 10, 2005 to prevent the filing of the 2003-2004 lien.  (Barrera, Day 1); (Hargis, Day 1); (Johnson, Day 1).

175.   Sobrevilla, on behalf of the IRS, could not agree to a bond at the time of the meeting. (Barrera, Day 1); (*see* Hargis, Day 1); (Johnson, Day 1). The acceptance of any bond or pledge was left to Sobrevilla's manager.  (Barrera, Day 1).

176.   The Plaintiff never furnished a  bond to the IRS.  (Barrera, Day 1); (Johnson, Day 2).

177.   While Plaintiff may have considered furnishing a bond to the IRS at one point , Plaintiff never followed through with the bond, and the IRS never accepted a bond from the Plaintiff, as required for a release of lien under 26 U.S.C. § 6325.  Plaintiff, therefore, presents no factual basis for asserting the "furnishing of a bond" as a ground for the release of the 2003-2004 lien.

35

### B.   Unenforceability of the Lien

178.   Plaintiff states that the 2003-2004 lien was unenforceable because the IRS failed to follow the procedural requirements for providing notice in 26 U.S.C. §§ 6320 & 6321 prior to filing the lien. (*See* Pl. Findings, pp. 13-14).

179.   Plaintiff's arguments mirror its arguments on not receiving statutory notice for the periods covered by the 1999-2002 lien. (*See* Pl. Findings, p. 13); *supra* Section III.  Plaintiff again attacks the accuracy of the IRS transcripts and the effect of Plaintiff's appeal of the IRS's denial of penalty refunds and abatement. (Pl. Findings, p. 12).

      1.   *Notice and Demand to Plaintiff Pursuant to 26 U.S.C. § 6321*

          a.   *Impeachment of the IRS Transcripts*

180.   Plaintiff again directs this Court to the testimony of IRS Revenue Officer Sobrevilla, stating that the testimony "destroyed" the integrity of IRS transcripts listing statutory notifications pursuant to 26 U.S.C. § 6321 sent to Plaintiff regarding the tax periods covered by the 2003-2004 lien. (Pl. Findings, p. 12).

181.   As stated in Section III of this decision, Plaintiff failed to present evidence, at least to satisfy this factfinder, that would upset the presumptive accuracy of the IRS transcripts.  *See Geiselman v. United States*, 961 F.2d 1, 6 (1st Cir. 1992); *see also supra* Section III.  Plaintiff's arguments regarding the integrity of the IRS transcripts do not even address the specific concerns of this case: whether the IRS made assessments and sent notice of those assessments pursuant to 26 U.S.C. § 6321.

b.    *Proper Notification Pursuant to 26 U.S.C. § 6321*

182.   Plaintiff asserts that it failed to receive proper statutory notice of assessments as required by 26 U.S.C. § 6321 prior to the filing of the 2003-2004 lien by the IRS.  This Court first turns to the events that led to the assessment of penalties against Plaintiff for periods in 2003-2004 and then to the evidence offered by Defendant showing that the IRS sent Plaintiff statutory notice according to 26 U.S.C. § 6321.

183.   Plaintiff's employees did not receive adequate training on the Texas State Bank software used by Plaintiff to pay its employment taxes electronically through the IRS EFTPS system.  *See supra* Section I at ¶¶ 25-33.  This lack of training led to errors in submitting payments to the IRS.  (*See id.*)

184.   Each time errors were made in the submission of data, the IRS received Plaintiff's deposits and payments a few days late.  *See supra* Section I at ¶ 34; (Def. Ex. 1 at pp. 152-153, 163, 172).

185.   The IRS assessed penalties against Plaintiff for late payments for these tax periods in 2003-2004.  (Def. Ex. 1 at pp. 152-153, 163, 172).

186.   The IRS sent Plaintiff a "Statutory Notice of Balance Due" for each period covered by the 2003-2004 lien satisfying the notice requirement of 26 U.S.C. § 6321.  (Def. Ex. 2 at p. 24) (sending notice for Plaintiff's 2003 Form 940 on April 19, 2004); (Def. Ex. 1 at p. 167) (sending notice for third quarter 2003 Form 941 on December 29, 2003); (*Id.* at p. 176) (sending notice for fourth quarter 2003 Form 941 sent March 15, 2004); (*Id.* at  182) (sending notice for first quarter 2004 Form 941 sent December 27, 2004); *see Geiselman v. United States*, 961 F.2d 1, 6 (1st Cir. 1992)., 961 F.2d at 6.  The IRS sent Plaintiff notices

of balance for its second quarter 2004 Form 941 on October 18, 2004, December 27, 2004 and January 31, 2005.

187.   Prior to the filing of the 2003-2004 lien, Plaintiff never fully paid all the taxes, interest and penalties owed for these periods. (*See, e.g.*, Johnson, Day 2).

188.   Since the IRS made assessments, sent notice of those assessments, and Plaintiff failed to pay the amounts owed, the IRS satisfied the requirements of 26 U.S.C. § 6321 prior to filing the 2003-2004 lien. *See* 26 U.S.C. § 6321.

189.   On May 9, 2005, the IRS filed a federal tax lien against Plaintiff reflecting both a Form 940 liability for 2003 and Form 941 liabilities for the third quarter of 2003 through the second quarter of 2004. (*See* Sobrevilla, Day 2). The liabilities totaled $101,279.02. (*See id.*)

190.   This Court finds that Defendant properly made assessments, sent statutory notice, and did not receive payment from Plaintiff, satisfying the requirements of 26 U.S.C. § 6321 prior to filing the 2003-2004 lien against Plaintiff.

191.   On April 29, 2005, the IRS sent a notice of filing of a federal tax lien for periods in 2003-2004 ("2003-2004 lien") to Plaintiff. (*See* Def. Ex. 1 at pp. 164, 173, 181); (Def. Ex. 2 at p. 22); (*see also* Pl. Ex. 52). Plaintiff admits receiving a notice of federal tax lien. (Pl. Ex. 56); *see also supra* Section I at ¶ 123, n.4.

192.   The 2003-2004 lien was therefore enforceable as filed and not subject to release on this ground. *See* 26 U.S.C. § 6325.

193.   Plaintiff's argument that the 2003-2004 lien was unenforceable because it fully paid the liabilities on the lien as of May 10, 2005 is also unpersuasive. (*See* Barrera, Day 1). This

38

payment occurred one day after the lien was filed on May 9, 2005 and has nothing to do with the enforceability of the lien when filed. *See* 26 U.S.C. § 6321.

### 2. *The Effect of an Appeal of a Denial of Penalty Abatement*

194. Plaintiff again fails to present any authority to show that the IRS was required to resend statutory notice after Plaintiff appealed the IRS denial of the abatement of penalties. *See supra* Section III. Once the IRS sent the original notices and Plaintiff refused to pay, the IRS was entitled to file the lien. *See* 26 U.S.C. § 6321. Plaintiff's filing of an appeal does not effect the enforceability of the 2003-2004 lien. *See id.*

### C. Satisfaction of the Liabilities Covered by the 2003-2004 Lien

195. Plaintiff asserts that the 2003-2004 lien should have been released because the liabilities covered by the lien were satisfied on May 10, 2005. (*See* Pl. Findings, pp. 13-14).

196. "[T]he Secretary shall issue a certificate of release of a lien imposed with respect to any internal revenue tax not later than 30 days after the day on which . . . the Secretary finds that the liability for the amount assessed, together with all interest in respect thereof, has been full satisfied . . . ." 26 U.S.C. § 6325(a)(1).

197. "It is the IRS, not the taxpayer, who must make the determination required by Section 6325" that the liabilities on a lien have been fully satisfied. *Kabakjian v. United States,* 92 F. Supp. 2d 435, 442 (E.D. Pa. 2000) (quoting *Husek v. Internal Revenue Service,* 778 F. Supp. 598, 605 (N.D.N.Y. 1991)).

198. The Secretary makes a "finding" that the liabilities on a lien are fully satisfied on the earlier of: (i) the date on which the district director of the district in which the taxpayer currently resides or the district in which the lien was filed finds full satisfaction; this finding must be

39

made as soon as practicable after the taxpayer provides payment in full of the outstanding liabilities owed on a lien; or (ii) the date on which such district director receives a request for a certificate of release of lien in accordance with Treas. Reg. § 401.6325-1(f) (1982), together with any information which is reasonably necessary for the district director to conclude that the lien has been fully satisfied.  Treas. Reg. §§ 301.7432-1(b) (1992), § 401.6325-1(c)(1) (1982).

199.   Plaintiff asserts that the liabilities on the 2003-2004 lien were fully paid on May 10, 2005. (*See* Sobrevilla, Day 2).

200.   Defendant counters that the IRS was not obligated to release the lien because: (i) new liabilities created by Plaintiff's amended return and the combined annual wage reconciliation, together with the IRS failure to make the adjustments specified in Sobrevilla's analysis, kept the liabilities for the periods on the 2003-2004 lien from ever being completely satisfied or; (ii) Plaintiff's filing of its CDP appeal removed Sobrevilla's jurisdiction and authority to release the lien.  (*See* Sobrevilla, Day 2); (Def. Findings at p. 10).

        1.    *Adjustments and a Payment Discussed at May 10th Meeting Satisfied the Plaintiff's Tax Liabilities for 2003-2004*

201.   The May 10, 2005 meeting and subsequent events were set out in detail above.  *See* Section. I at ¶¶ 46-50.

202.   At the conclusion of the May 10, 2005 meeting, Plaintiff gave Sobrevilla a check for $1,716.47 to cover the outstanding liabilities for tax periods in 2003-2004.  (*See* Johnson, Day 1); (Hargis, Day 1); (Barerra, Day 1). The remainder of the liabilities for 2003-2004